IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRUMPY CAT LIMITED, | ) |
|       Plaintiff, | ) Case No.: 20-cv-7152 <br> ) <br> ) Judge |
| v. | ) <br> ) |
| THE INDIVIDUALS, CORPORATIONS, <br> LIMITED LIABILITY COMPANIES, <br> PARTNERSHIPS AND UNINCORPORATED <br> ASSOCIATIONS IDENTIFIED <br> ON SCHEDULE A HERETO, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|       Defendants. | ) |

**COMPLAINT**

Plaintiff GRUMPY CAT LIMITED ("Plaintiff"), by undersigned counsel, hereby complains of the Partnerships, Unincorporated Associations and others identified in Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Act, 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive

commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiffs' federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's GRUMPY CAT trademark, which is covered by U.S. Trademark Registration Nos. 4,907,212; 5,516,378; 4,820,434; 4,417,549; 4,672,289; 5,073,528; 4,527,097; 4,930,286 and 4,907,213. The Registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates are attached hereto as Group Exhibit 1.

4. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between

them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademark, as well as to protect unknowing consumers from purchasing unauthorized GRUMPY CAT products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFFS

6. Plaintiff GRUMPY CAT LIMITED is an Ohio limited liability company.

7. Plaintiff GRUMPY CAT LIMITED is the registered owner of the GRUMPY CAT trademark (U.S. Trademark Registration Nos. 4,907,212; 5,516,378; 4,820,434; 4,417,549; 4,672,289; 5,073,528; 4,527,097; 4,930,286 and 4,907,213.). Plaintiff also owns numerous copyright registrations for various Grumpy Cat works as listed in Exhibit 2. Grumpy Cat is an American Internet celebrity cat which became an internet sensation after her photo was posted on Reddit on September 22, 2012. The videos went viral and her popularity has continued to increase. GRUMPY CAT LIMITED is the official source of GRUMPY CAT products, which include:

https://www.grumpycats.com/shop



8. Since at least October 15, 2013, the GRUMPY CAT mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the GRUMPY CAT mark in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the GRUMPY CAT website and social media sites, and point of sale materials.

9. The GRUMPY CAT trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registrations for the GRUMPY CAT trademark constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the GRUMPY CAT trademark pursuant to 15 U.S.C. § 1057(b).

10.     The GRUMPY CAT trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1) and has been continuously used and never abandoned.

11.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the GRUMPY CAT trademark. As a result, products bearing the GRUMPY CAT trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

12.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit GRUMPY CAT products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

13.     The success of the GRUMPY CAT brand has resulted in its counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Amazon including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit GRUMPY CAT products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135

billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2017 was over $1.21 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

14. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GRUMPY CAT products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards or through Amazon. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

15. Plaintiff has not licensed or authorized Defendants to use the GRUMPY CAT trademark or copyrights, and none of the Defendants are authorized retailers of genuine GRUMPY CAT products.

16. Upon information and belief, Defendants also deceive unknowing consumers by using the GRUMPY CAT trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for GRUMPY CAT products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social

media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for genuine GRUMPY CAT products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit GRUMPY CAT products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the counterfeit GRUMPY CAT products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit GRUMPY CAT products were manufactured by and come from a common source and

that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

19. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

20. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and Amazon accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Amazon accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Amazon transaction logs from previous similar cases indicates that offshore counterfeiters regularly

8

move funds from U.S.-based Amazon accounts to China-based bank accounts outside the jurisdiction of this Court.

21. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the GRUMPY CAT trademark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit GRUMPY CAT products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit GRUMPY CAT products into the United States, including Illinois.

22. Defendants' use of the GRUMPY CAT trademark in connection with the advertising, distribution, offering for sale, and sale of counterfeit GRUMPY CAT products, including the sale of counterfeit GRUMPY CAT products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

23. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-22 of this Complaint.

24. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered GRUMPY CAT trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. GRUMPY CAT trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiffs' products provided under the GRUMPY CAT trademark.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the GRUMPY CAT trademark without Plaintiff's permission.

26. Plaintiff GRUMPY CAT LIMITED is the registered owner of the GRUMPY CAT trademark (U.S. Registration Nos. 4,907,212; 5,516,378; 4,820,434; 4,417,549; 4,672,289; 5,073,528; 4,527,097; 4,930,286 and 4,907,213). The United States Registrations for the GRUMPY CAT trademark (Group Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the GRUMPY CAT trademark and are willfully infringing and intentionally using counterfeits of the GRUMPY CAT trademark. Defendants' willful, intentional, and unauthorized use of the GRUMPY CAT trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

28. The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit GRUMPY CAT products.

29. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their well-known GRUMPY CAT trademark.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-29 of this Complaint.

31. Defendants' promotion, marketing, offering for sale, and sale of counterfeit GRUMPY CAT products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit GRUMPY CAT products by Plaintiff.

32. By using the GRUMPY CAT trademark in connection with the sale of counterfeit GRUMPY CAT products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit GRUMPY CAT products.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit GRUMPY CAT products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

35. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-34 of this Complaint.

11

36. Plaintiff's products have significant value and have been produced and created at considerable expense.

37. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted products, including derivative works. Plaintiff's works are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights. (Exhibit 2). The copyrighted works include a copyright notice advising the viewer that Plaintiff's products are protected by the Copyright Laws.

38. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's works, Defendants wrongfully created copies of the copyrighted products without Plaintiff's consent and engaged in acts of widespread infringement.

39. Plaintiff is informed and upon belief thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's products by producing and distributing reproductions without Plaintiff's permission.

40. Plaintiff's products include a copyright notice advising the general public that Plaintiff's products are protected by Copyright Laws.

41. Defendants, without the permission or consent of Plaintiff, have, and continue to sell online infringing derivative works of Plaintiff's copyrighted products. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

42. As a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted products. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's products.

43. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

44. As a result of Defendants infringement of Plaintiff's exclusive rights under copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

45. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be compensated fully or monetized. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering Defendants to destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of Plaintiff's products from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. §503.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

46. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-45 of this Complaint.

47. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit GRUMPY CAT products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine GRUMPY CAT products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

48. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

49. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the GRUMPY CAT trademark and copyrighted artwork or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine GRUMPY CAT product or is not authorized by Plaintiff to be sold in connection with the GRUMPY CAT trademark and copyrighted artwork;

b. passing off, inducing, or enabling others to sell or pass off any products as a genuine GRUMPY CAT products or any other products produced by Plaintiff that are not Plaintiff's or are not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the GRUMPY CAT trademark and copyrighted artwork;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit GRUMPY CAT products are sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the GRUMPY CAT trademark and copyrighted artwork and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any trademark of Plaintiff, including the GRUMPY CAT trademark and copyrighted artwork, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit GRUMPY CAT products; and

  h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the GRUMPY CAT trademarks and copyrighted artwork or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine GRUMPY CAT products or not authorized by Plaintiff to be sold in connection with the GRUMPY CAT trademark and copyrighted artwork;

 2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

 3) Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

 4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Amazon, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines

such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit GRUMPY CAT products using the GRUMPY CAT trademark and copyrighted artwork, including any accounts associated with the Defendants listed in Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit GRUMPY CAT products using the GRUMPY CAT trademark and copyrighted artwork; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the GRUMPY CAT trademark and copyrighted artwork be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the GRUMPY CAT trademark;

7) That Plaintiff be awarded their reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Respectfully submitted,

Dated: December 3, 2020

By:   <u>s/Michael A. Hierl</u>
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
(312) 580-1994 Facsimile
mhierl@hsplegal.com

Attorneys for Plaintiff
GRUMPY CAT LIMITED

18

...

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on December 3, 2020.

                                                                   s/Michael A. Hierl